# EXHIBIT A

⚜ **EFILED IN OFFICE**
CLERK OF STATE COURT
COBB COUNTY, GEORGIA

**21-A-1846**

MAY 24, 2021 05:33 PM

*Robin C. Bishop*
Robin C. Bishop, Clerk of State Court
Cobb County, Georgia

## IN THE STATE COURT OF COBB COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| LOIS MARSHALL,<br><br>               Plaintiff,<br><br>vs.<br><br>GEORGIA CVS PHARMACY, L.L.C.;<br>GEORGIA CVS PHARMACY, LLC<br>D/B/A CVS PHARMACY #6106; CVS<br>PHARMACY, INC.; ABC COMPANY 1-<br>5; JANE DOE 1-5;<br>               Defendants. | Civil Action File Number<br><br>_____<br><br>JURY TRIAL DEMANDED |

## **COMPLAINT**

COMES NOW, Plaintiff, LOIS MARSHALL, (hereinafter referred to as "Plaintiff"), and files this, her *Complaint* and in support thereof shows the Court the following:

1.

Plaintiff shows that Defendant GEORGIA CVS PHARMACY, L.L.C. ("CVS") is a domestic limited liability company formed in Georgia with its principal office located in Woonsocket, Rhode Island and its registered agent in Lawrenceville, Georgia and doing business in the County of Cobb, State of Georgia, where the causes of action described hereinafter arose, and is therefore subject to the jurisdiction of this Court and venue is proper.

2.

Plaintiff shows that Defendant GEORGIA CVS PHARMACY, LLC d/b/a CVS PHARMACY #6106 ("CVS #6106") is a variation of Defendant CVS and is therefore subject to the jurisdiction of this Court and venue is proper.

3.

Plaintiff shows that Defendant CVS PHARMACY, INC. ("CVS, INC.") is a foreign corporation with its principal office located in Woonsocket, Rhode Island and its registered agent in Lawrenceville, Georgia and doing business in the County of Cobb, State of Georgia, where the causes of action described hereinafter arose, and is therefore subject to the jurisdiction of this Court and venue is proper.

4.

Plaintiff shows that Defendants ABC COMPANY 1-5 ("Companies") are as-yet-unidentified business entities doing business in the County of Cobb, State of Georgia, are therefore subject to the jurisdiction of this Court and venue is proper.

5.

Plaintiff shows that Defendants JANE DOE 1-5 ("Unidentified Individuals") are as-yet-unidentified individuals subject to the jurisdiction of this Court and venue is proper.

## STATEMENT OF FACTS

6.

Plaintiff received two full doses of the Moderna vaccine for COVID-19, with the first dose being administered to her on January 29, 2021 and the second on March 5, 2021 (See Vaccination Card at Exhibit "A").

7.

Plaintiff made an appointment for a COVID rapid test at CVS Pharmacy 6106 located at 100 E. Piedmont Road, Marietta, Georgia for 9:00 a.m. on April 26, 2021 (See Text Messages from CVS to Plaintiff at Exhibit "B"). Plaintiff had no symptoms, but needed a negative test result so that she could go on her upcoming international trip to Aruba without being quarantined.

8.

Plaintiff arrived at CVS #6106 at approximately 9:00 a.m. and underwent the COVID-19 test process, with the collection being done at 9:14 a.m.. Plaintiff was told to wait in her car for approximately 15 minutes, at which time she would be called into the store to receive her test results.

9.

After waiting over an hour and receiving no call, Plaintiff went back into the store, wearing her mask, to use the restroom and inquire about her test results. Immediately after entering the restroom, Plaintiff heard shouting outside in the store, saying "She's not supposed to be in here! She has the virus!" Without using the facilities, Plaintiff quickly left the restroom and found the nurse practitioner (hereinafter "NP") yelling at the receptionist of the Minute Clinic within the store. Plaintiff asked if they were talking about her, and NP responded affirmatively, shouting "You have COVID-19! You can't be in here!" Plaintiff stated that she had just entered the store to use the restroom and that it must be a false positive because she had been fully vaccinated and she tested negative right before receiving the vaccination, so Plaintiff suggested that she be re-tested. NP responded that there is no such thing as a false positive and that Plaintiff must leave and use the restroom at the gas station down the street. NP threatened to call the police if Plaintiff did not leave, and she escorted Plaintiff out of the store while shouting that she had COVID-19 so that everyone in the store could hear.

10.

Plaintiff was publicly humiliated by NP screaming out her test results in the store so that everyone else could hear and identify her as a carrier of the virus. Plaintiff then had to walk a

gauntlet through other shoppers to leave the store. And she had to do this while she was also extremely distraught at possibly having COVID-19, despite being fully vaccinated.

11.

Plaintiff did not receive her test results from the CVS Minute Clinic until 10:31 a.m., over an hour and a half after the test was administered (See Texts from CVS at Exhibit "B").

12.

The test results Plaintiff received from CVS did show a positive result, but clearly indicated that a false positive result was possible with this test (See CVS Test Results at Exhibit "C").

13.

Later on the same day, Plaintiff went to another facility located at Peachtree Immediate Care for another COVID-19 test, because her upcoming international trip required a negative COVID-19 test result. The test results Plaintiff received this facility were negative (See Test Results at Exhibit "D").

14.

Plaintiff flew to Aruba without incident and, while there, got tested twice for COVID-19, once when she arrived and another three days later right before she left, and the test results were negative again (See Aruba Test Results at Exhibits "E-1" and "E-2").

15.

While in Aruba, Plaintiff received a call from Cobb County Health Department (see phone records at Exhibit "F") telling her that they had received notification from CVS that she had COVID-19 and she had to quarantine upon her return to the United States. The Health Department told Plaintiff that she had been registered in the national database as a carrier of the virus. Plaintiff explained that she had multiple negative COVID-19 tests since the positive test

administered at CVS #6106, that the CVS result must have been a false positive, and that she did

not, in fact, have COVID-19.  Due to this call, Plaintiff took her second COVID-19 test in Aruba

before leaving and suffered severe anxiety at the possibility of being quarantined and fear of the

result of being registered as a COVID carrier in a national database.  Plaintiff never gave

permission to CVS to disseminate her test results or any other health information about herself,

whether to a government agency or to other shoppers within the CVS store.

<div align="center">16.</div>

Plaintiff reviewed her test results and patient instructions from CVS and noticed that they

showed a positive result was reached at 9:00a.m. on April 26, 2021, fourteen minutes BEFORE

the COVID-19 test was actually performed, if it was, in fact, ever completed at all (See Patient

Instructions at Exhibit "G").  Based on this information, Plaintiff reasonably concludes that CVS,

or its employees, had pre-determined that she would receive a positive result on her COVID-19

test before she even arrived at the store to take the test.

<div align="center">

**CAUSES OF ACTION**

**COUNT I: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

17.

</div>

Plaintiff incorporates herein by reference each of the allegations contained in the preceding

paragraphs as fully as though set forth verbatim herein.

<div align="center">18.</div>

Plaintiff shows that she suffered intense emotional distress and humiliation from

Defendant's employee (the Nurse Practitioner, or "NP") shouting out that she had COVID-19 in

the middle of a busy retail store full of shoppers.  The NP further exacerbated Plaintiff's extreme

distress by falsely claiming that there was no possibility of a false positive result in this particular

type of COVID-19 test.  NP knew or should have known that her actions would inflict severe emotional distress upon Plaintiff, therefore making her actions intentional under the law.

19.

Additionally, NP's refusal to administer another test to confirm or refute the results of the first test further distressed Plaintiff, who was then forced to find another facility to perform a second test in order to have any chance of traveling on the tickets she had already purchased. Furthermore, Plaintiff experienced great anxiety during her trip, fearing that she would be required to quarantine at the U.S. Embassy or at the airport upon her return to the United States.  Her anxiety was so intense that she spent hours getting re-tested twice in Aruba and worrying to such an extent that her vacation was ruined.

20.

Plaintiff shows that both NP, whose identity is currently unknown but will be established through discovery, and all other named Defendants, are liable to Plaintiff for intentionally inflicting emotional distress upon her, whether directly or through principles of vicarious liability, including, but not limited to, respondeat superior, negligent hiring, and insufficient training.

## COUNT II: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

21.

Plaintiff incorporates herein by reference each of the allegations contained in the preceding paragraphs as fully as though set forth verbatim herein.

22.

The Nurse Practitioner's infliction of emotional distress upon Plaintiff was clearly negligent.  Her shouting Plaintiff's test results out so that everyone in the store could hear them would foreseeably inflict intense emotional distress upon Plaintiff.  NP's false assertion that there

was no possibility of a false positive result in this particular type of COVID-19 test also demonstrates her negligence and possible lack of training and education. For Defendants to put someone so grossly incompetent in such a position demonstrates their negligence as well.

23.

Therefore, both NP and all other named Defendants are liable to Plaintiff for negligently inflicting emotional distress upon her, whether directly or through principles of vicarious liability, including, but not limited to, respondeat superior, negligent hiring, and insufficient training.

## COUNT III: SLANDER

24.

Plaintiff incorporates herein by reference each of the allegations contained in the preceding paragraphs as fully as though set forth verbatim herein.

25.

Defendants, by and through their employee(s) by principles of vicarious liability cited hereinabove, committed slander against Plaintiff as defined by O.C.G.A. § 51-5-4(a)(2) by "Charging a person with having some contagious disorder...which may exclude him from society." Defendants, through their employee, loudly and publicly charged Plaintiff with having COVID-19 and ordered her to leave the store and quarantine herself, thereby excluding her from society. Under O.C.G.A. § 51-5-4(b), damages can be inferred as a result of this conduct and Plaintiff need not show any special damages to prevail.

## COUNT IV: LIBEL

26.

Plaintiff incorporates herein by reference each of the allegations contained in the preceding paragraphs as fully as though set forth verbatim herein.

27.

Defendants, by and through their employee(s) by principles of vicarious liability cited hereinabove, additionally committed libel against Plaintiff as defined by O.C.G.A. § 51-5-1(a) by falsely and maliciously defaming her in writing in a manner "tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." Defendants reported false information regarding Plaintiff to the Cobb County Health Department, resulting in unwanted, unnecessary and injurious communications from state agencies with police power to enforce quarantine upon Plaintiff. Defendants' obligation to report test results to state agencies is no excuse for their actions here, as their obligation is to report ACCURATE results and Defendants were negligent in meeting this obligation by claiming false positives were impossible and refusing to perform a second test.

## COUNT V: UNAUTHORIZED PUBLICATION OF PRIVATE FACTS

28.

Plaintiff incorporates herein by reference each of the allegations contained in the preceding paragraphs as fully as though set forth verbatim herein.

29.

The elements of a publication of private facts claim are: (i) the disclosure of private facts must be a public disclosure; (ii) the facts disclosed to the public must be private, secluded, or secret facts and not public facts; and (iii) the matter made public must be offensive and objectionable to a reasonable person of ordinary sensibilities under the circumstances. See *Multimedia WMAZ v. Kubach*, 443 S.E.2d 491 (Ga.Ct.App. 1994).

30.

Here, Defendants, by and through their employee(s) by principles of vicarious liability cited hereinabove, publicly disclosed the (incorrect) fact that Plaintiff had COVID-19 to everyone in the store at that time and clearly identified Plaintiff as the person who allegedly had this virus. Plaintiff's test results are private health information (PHI), as defined by the Health Insurance Portability and Accountability Act of 1996 (HIPAA), therefore the fact disclosed here is clearly private and not public. Finally, the matter made public is, as in *Kubach*, extremely offensive and objectionable due to the reaction people had to Plaintiff as a possible carrier of the virus. People shunned her and ran from her as if she was a leper in ancient times, thereby indicating the offensiveness of the disclosure.

## COUNT VI: VIOLATION OF CIVIL RIGHTS

31.

Plaintiff incorporates herein by reference each of the allegations contained in the preceding paragraphs as fully as though set forth verbatim herein.

32.

By informing the entire store of Plaintiff's test results, Defendants, by and through their employee(s) by principles of vicarious liability cited hereinabove, violated the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPAA). Defendants released Plaintiff's private health information to the general public, county health department, and a national database of COVID carriers without her knowledge or consent. While HIPAA does not grant a private right of action, and the penalties for violating HIPAA are adjudicated and administered by the Department of Health and Human Services (HHS), the Act does establish an

objective standard for private health information and provides a benchmark by which Courts can judge when a person's medical privacy has been violated, as occurred here.

33.

In addition to the violation of privacy, Defendants, by and through their employee(s) by principles of vicarious liability cited hereinabove, violated Plaintiff's civil rights by refusing to allow her to use the restroom in their store. While this refusal was purportedly based on Defendants' false diagnosis that she had COVID-19, Plaintiff, as an African-American woman, is a prime target for race and gender based discrimination and, based on information and belief, evidence acquired through discovery will show that Defendants' actions, through their employees, were taken with improper and illegal discriminatory motives.

**COUNT VII: DECEIT**

34

Plaintiff incorporates herein by reference each of the allegations contained in the preceding paragraphs as fully as though set forth verbatim herein.

35.

Finally, Defendants, by and through their employee(s) by principles of vicarious liability cited hereinabove, violated O.C.G.A. 51-6-2 by fraudulently or recklessly representing the fact that Plaintiff had COVID-19 as true when she did not actually have COVID-19. Defendants' intent to deceive is indicated by their insistence that there was no possibility of a false positive result on the test and that they pre-determined that she would receive a positive COVID-19 test result BEFORE administering the test, as evidenced by the positive result at 9:00 a.m. when the collection of the sample for the test was not performed until 9:14 a.m., 14 minutes AFTER the positive result was recorded by the Nurse Practitioner in Plaintiff's chart.

**WHEREFORE**, Plaintiff respectfully prays that:

a)      That Summons and Process issue as required by law and Defendants be served with same;

b)      That Plaintiff be awarded judgment against Defendants in an amount to be determined at trial, but not less than $45,000.00, due to their intentional or negligent infliction of emotional distress, slander, libel, deceit, public disclosure of private facts, violation of civil rights, violation of state and federal law, and other breaches of duty owed to Plaintiff as set forth in this Complaint;

c)      That Plaintiff be awarded reasonable attorney fees pursuant to O.C.G.A. § 19-6-2 and other applicable law;

d)      That Plaintiff be awarded such other and further relief as this Court deems just and equitable.

This 24th day of May, 2021.

Respectfully submitted,

*/s/Matthew Michaud*
MATTHEW MICHAUD
GEORGIA BAR NO. 504098
ATTORNEY FOR PLAINTIFF

CHAIN BREAKER LAW FIRM, P.C.
P.O. BOX 965062
SANDY PLAINS ROAD
MARIETTA, GEORGIA 30066
470.309.1441
mmichaud@chainbreakerlaw.com

Exhibit "A"





Sun, Apr 25, 6:11 AM

Exhibit "B"

Confirming COVID rapid test at 100 PIEDMONT RD... on 04/26/21 at 09:00 AM. Conf. code YV5F2K8. To cancel i.cvs.com/cnf/poct/YV5F2K8 Reply STOP to stop

Mon, Apr 26, 7:50 AM

Your COVID-19 test is today at 100 PIEDMONT RD,MARIETTA,GA 30066 at 09:00 AM. To cancel i.cvs.com/ cnf/pctr/YV5F2K8

MinuteClinic: Prepare for your upcoming visit. Please review this video before you arrive https://bit.ly/ 2WG9hRB

Mon, Apr 26, 10:31 AM

MinuteClinic: Your test result is ready. To view it, go to i.cvs.com/ Jb9MpeG. This link will expire in 5 days

 Menu   

# LUMIRADX SARS-COV-2 AG TEST

Results
**Abnormal**

Status: Final result (Collected: 4/26/2021 9:14 AM)

Hello,

You have a **POSITIVE** Covid-19 Test Result.

If you have a positive test result, it is very likely that you have COVID-19. Therefore, it is also likely that you may be placed in isolation to avoid spreading the virus to others. There is a very small chance that this test can give a positive result that is wrong (a false positive result). Some people who test positive for COVID-19 may be eligible to receive monoclonal antibody treatment. Patients who have a PCP should talk to their provider to screen for and order this treatment if indicated. Patients without a PCP can go to an urgent care center or ER for evaluation. For more information regarding this treatment and to see if it may be something you could qualify for, see this Patient Fact Sheet .

Exhibit "C"

| Component | Value | Flag | Ref Range | Units | Status |
|-----------|-------|------|-----------|-------|--------|

Patient: LOIS MARSHALL, Sex: F
Date of Service: 04/26/2021 (Log# 2818175)
Date of Birth: ████████ (years)
Patient ID: ████████


**PEACHTREE**
**IMMEDIATECARE**
*Get in. Get out. Get better.*

Peachtree Immediate Care
2481 GEORGE BUSBEE PKWY NW
KENNESAW, GA 30144-4961
770-423-0000  F: 770-423-0131

## In-House Lab Lab Report 1

**Report Status: In Process, Unspecified**
Collected: N/A
Received: N/A
Reported:  4/26/2021 1:32:00 PM
Who Pays For Lab: Practice Bills

<div style="border:1px solid black">**Exhibit "D"**</div>

**Additional Patient Information:**
DOB: ████████
Gender: F
Clinic Patient Number: ████████
Patient ID Number: ████████
**Additional Clinic Information:**
Clinic Account Number ████████
Secondary Account Number: Not Available

**Ordering Physician:**
MCELVEEN, CHARLES

**Specimen Information:**
Specimen:
PV Requisition Number: ████████
Placer Order Number: ████████

**Current Test Results**

| Test Name | In Range | Out Of Range | Ref. Range | Lab |
|---|---|---|---|---|
| Coronavirus Antigen IA Rapid Test - Varied | | | | |
|   Coronavirus Antigen IA Rapid Test | | | | |
|     SARS-CoV-2 nucleicapsid protein antigen | Negative | | | |

**Performing Laboratory Information:**
Performing Lab Information Not Available





*Get In. Get out. Get better.*

## COVID Rapid Testing Discharge Instructions

**If you tested positive for COVID-19:**

- Schedule a follow-up visit via Telemedicine for the next day or no later than 48 hours. If not done prior to leaving, visit peachtreemed.com/telemed to schedule your visit.
- Go home and self-isolate for 10 days following the onset of your symptoms. If you do not have any symptoms, you should isolate for 10 days following your positive test result. If you wish to discontinue isolation before 10 days (for healthcare and essential workers only), you will need two negative tests at least 24 hrs apart to discontinue isolation. You should not go outside your home except for recommended testing per CDC guidance or required medical care. Do not go to work, school, or public areas and avoid using public transportation, ride-sharing (Uber/Lyft), or taxis. Cover your mouth and nose with a facemask.
- Seek medical care if you develop any symptoms or any current symptoms worsen (e.g. if you develop difficulty breathing). **Before** getting care, call your closest Peachtree Immediate Care or your doctor's office and describe any symptoms you are experiencing. If you have a medical emergency, call 911.

**If you tested negative for COVID-19 but still have symptoms** (e.g., fever, cough, and shortness of breath):

Because a negative rapid test result cannot completely rule out COVID-19, the provider may choose to conduct a backup molecular PCR COVID test that will result in 3-5 days. This timeframe may change as demand increases. The provider may send out a confirmatory PCR test if you are exhibiting the symptoms most concerning and specific for COVID (as listed above), or if you have had direct exposure to an individual who tested positive for COVID-19 within the last 14 days. This decision is ultimately based on the provider's discretion. In the meantime, you should assume that you are positive for COVID and follow the isolation guidelines above for positive patients. If your PCR test is also negative, it is still possible that you are positive for COVID, and therefore, should consider isolating per CDC guidelines. You may also follow up at one of our urgent care clinics nearest you so that we can rule out other causes of your symptoms (e.g., flu, strep, bronchitis). Please check-in online at peachtreemed.com. If you develop worsening symptoms, you should contact one of our clinics or your primary doctor, or if severe, proceed to the nearest ER for evaluation.

**If you tested negative for COVID-19 and have no symptoms:**

- You have tested negative for COVID and should continue to practice social distancing and wear a mask when out in public.
- You do not need to quarantine unless you have had a direct, first-hand exposure (as defined by the CDC) to an individual who tested positive for COVID-19. If exposed, you should quarantine for 10 days and you can shorten this time to 7 days with a negative test.
- If you think you may have had COVID and have not had symptoms in the last 10 days, you may come to one of our urgent care clinics and get antibody testing to determine if you had any exposure to the virus.
- Continue to monitor for any symptoms. If you develop symptoms, consider re-testing for COVID.

---

**Patient Name:** ███████████████

**COVID-19 Result: Pos or (Neg)**   **PCR?** Y / N

**Provider Name:** Drew McElveen FNP-C

**Provider Signature:** ___ M ___ FNP-C

**Date:** 04 / 26 / 2021

**Test:** Quidel Rapid Antigen Diagnostic Assay

Updated 12/9/2020


https://www.labhoh.org


TESTING
RvA M 321

**PATIENT REPORT**

Exhibit "E-1"

Date: April 27 2021

Name: MARSHALL LOIS

Date of birth: ███████████

Sample number: ███████████

**Test: COVID-19 PCR on nasopharynx/throat swab**

Sample taken on: April 27 2021 - 14:27:51

Date result: April 27 2021 - 22:11:42

Result: Negative

To verify this document please scan the following QR Code:



Andert Rosingh MD
Clinical microbiologist

Dr. Horacio E. Oduber Boulevard #1, Oranjestad,



**Covid
Test Center
Aruba**



| Exhibits "E-2" |

**I.L. Laboratorio Familiar N.V.**

De La Sallestraat 72
Oranjestad
Aruba

| **Patient:** | Lois Marshall |
| **Address:** | ███████████ |
| | USA 30066 |
| **Date of Birth:** | ██████████ |
| **Gender:** | Female |
| **ID Number:** | ████████ |

**Date:**     30 April 2021

| Test No: W6duArPi | Sample Date: 30 April 2021 17:36 |
| --- | --- |
| **Parameter** | **Result** |
| COVID-19 Antigen Test Nasopharyngeal Swab | NEGATIVE |

**Remarks (if applicable):**    Negative defines that no Antigen of the Sars-CoV-2 virus (CoVid-19) has been detected. If you have come into contact with an infected person and you have symptoms, please contact your GP.

| **Test No. Released:** | Status report: definitive |
| | R. STEINGROVER M.D. CLINICAL MICROBIOLOGIST |
| | 30 April 2021 |

| **Hotel Name:** | Hilton |
| **Room No.:** | 1617 |
| **Flight Date:** | 05/02/2021 |
| **Destination:** | Atlanta |



**Inther Pharma**

HUISARTSENPRAKTIJK H.K.Y VBA
**Doctor Ho Kang You**
Constantijn Huygensstraat 5-A
Oranjestad
Aruba
Phone: +297 566 4694
KvK-Nummer H50073.0



ONE HAPPY & SAFE ISLAND





traxprint.com

Download the free app to scan and verify

**5:03**  .ıll 5G E 🔋

Exhibits "F"

‹ Recents



# +1 (470) 596-0373

### Maybe: Dominique Harrison

    

message    call    video    mail    pay

### April 29, 2021

2:02 PM **Incoming Call**
        14 minutes

## Share Contact

## Create New Contact

## Add to Existing Contact

## Add to Emergency Contacts

## Share My Location

## Block this Caller

    

Favorites    Recents    Contacts    Keypad    Voicemail

**+1 (470) 596-0373** 
Maybe: Dominique Harrison
April 28, 2021 at 12:01 PM

0:00                                                    −0:27

   

## Transcription Beta

"Hi this is Emily calling from the cop County public health plan _____ I'm calling about an important matter when you get a chance _____ please call me back at 470-596-0378 again this is _____ calling from the cop in Douglas County public health department calling about an important matter when you get a chance can you please call me back at 470-596-0373 I a.m. here is the 330 thank you..."

Was this transcription useful or not useful?

Exhibit "G"

After Visit
Summary®   Notes

# Patient Instructions

Nurse Althea B at 4/26/2021  9:00 AM

Patient was reached and results were delivered.

**Positive Test results** You were seen for COVID-19 Testing and have tested positive. Follow up with your primary care provider for questions or any new symptoms. According to the Centers for Disease Control (CDC), you can stop self-isolating if you meet the below criteria

---

*If you will not have a test* to determine if you are still contagious, you can leave home after these three things have happened:

- You have had no fever for at least 24 hours (that is 24 hours of no fever without the use medicine that reduces fevers) **AND**
- other symptoms have improved (for example, when your cough or shortness of breath have improved) **AND**
- at least 10 days have passed since your symptoms first appeared

**General Civil and Domestic Relations Case Filing Information Form**

☆ **EFILED IN OFFICE**
CLERK OF STATE COURT
COBB COUNTY, GEORGIA

**21-A-1846**

☐ Superior or ☑ State Court of ___Cobb___ County

MAY 24, 2021 05:33 PM

| For Clerk Use Only | |
|---|---|
| Date Filed _05-24-2021_ <br> **MM-DD-YYYY** | Case Number _21-A-1846_ |

*Robin C. Bishop*
Robin C. Bishop, Clerk of State Court
Cobb County, Georgia

**Plaintiff(s)**

Marshall, Lois

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |

**Defendant(s)**

CVS PHARMACY, INC.

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| GEORGIA CVS PHARMACY, L.L.C, et. al. | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| GEORGIA CVS PHARMACY, LLC | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** _Michaud, Matthew_     **Bar Number** _504098_     **Self-Represented** ☐

### Check one case type and, if applicable, one sub-type in one box.

**General Civil Cases**

- ☐ **Automobile Tort**
- ☐ **Civil Appeal**
- ☐ **Contract**
- ☐ **Contempt/Modification/Other Post-Judgment**
- ☐ **Garnishment**
- ☑ **General Tort**
- ☐ **Habeas Corpus**
- ☐ **Injunction/Mandamus/Other Writ**
- ☐ **Landlord/Tenant**
- ☐ **Medical Malpractice Tort**
- ☐ **Product Liability Tort**
- ☐ **Real Property**
- ☐ **Restraining Petition**
- ☐ **Other General Civil**

**Domestic Relations Cases**

- ☐ **Adoption**
- ☐ **Contempt**
  - ☐ **Non-payment of child support, medical support, or alimony**
- ☐ **Dissolution/Divorce/Separate Maintenance/Alimony**
- ☐ **Family Violence Petition**
- ☐ **Modification**
  - ☐ **Custody/Parenting Time/Visitation**
- ☐ **Paternity/Legitimation**
- ☐ **Support – IV-D**
- ☐ **Support – Private (non-IV-D)**
- ☐ **Other Domestic Relations**

☐    Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____    _____
**Case Number**                        **Case Number**

☑    I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐    Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____
**Language(s) Required**

☐    Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____
_____

Version 1.1.20